UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD COCHRANE,

                Petitioner,                          Case Number 09-11963
                                                            Honorable David M. Lawson

v.

DEBRA SCUTT,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      Petitioner Ronald Cochrane is a Michigan prisoner challenging his convictions of twelve counts of first-degree criminal sexual conduct, Mich. Comp. Laws 750.520b, and one count of second-degree criminal sexual conduct. Mich. Comp. Laws 750.520c. His petition for a writ of habeas corpus filed under 28 U.S.C. § 2254 raises five claims: (1) the trial court erroneously denied the petitioner's motion to adjourn his retrial; (2) the trial court erroneously denied the petitioner's motion for an independent psychological evaluation of the complainant; (3) the trial court erroneously allowed admission of inconsistent statements by the complainant; (4) the trial court imposed an excessive sentence to punish the petitioner for exercising his right to a trial; and (5) prosecution witnesses and members of the complainant's family made contact with jurors prior to their deliberations. The Court finds that none of the petitioner's claims has merit. Therefore, the Court will deny the petition.

I.

      The petitioner was found guilty of the crimes following a jury trial in the Macomb County, Michigan circuit court and he was sentenced to concurrent prison terms of 17½-to-30 years for all the counts of first-degree criminal sexual conduct convictions and 57 months to 15 years for the

second-degree criminal sexual conduct conviction.  The petitioner originally was tried in November

2005, but the court declared a mistrial after the jury was unable to reach a verdict.

The Michigan Court of Appeals summarized the facts of the case at the second trial as

follows:

> Defendant, a 67-year-old grandfather, was convicted of sexually assaulting his granddaughter in 1999 and 2000, when she was nine and ten years old.  The victim, age 15 at the time of trial, testified that she spent some Saturdays with defendant in his Sterling Heights apartment.  The victim further testified that during  the first incident, she and defendant were sitting on a couch and defendant asked her if she "ha[s] hair down there?"  When the victim responded affirmatively, defendant replied, "it was probably only peach fuzz."  The victim showed defendant her pubic hair, and defendant "put his fingers" in her vagina, which "hurt."  Neither party said anything afterward.  Thereafter, defendant digitally penetrated the victim's vagina "almost every time [she] went over there to stay the night."

> The victim testified that on one Saturday when she was still nine, she was in defendant's kitchen, reached for a bowl of ice cream on the counter, and hit her head.  When defendant came to help her, "he pulled [her] pants down and stuck his tongue [in her] vagina."  Defendant thereafter orally penetrated the victim's vagina "almost every time" she visited.  Each act would generally last about five minutes.  The victim indicated that after defendant orally penetrated her, he would occasionally tell her, "[I]f [he] gave — or if [she] received, then [she] should give."  The victim explained that defendant meant that "he wanted [her] either to lick or suck his penis, or play with it."  She recalled "twice sucking and licking on [defendant's penis] and once playing with it" "with her hand."

> The victim testified that on another Saturday when she was ten, she and defendant were in defendant's bedroom.  The victim indicated that she was "on top of [defendant]," "he had his penis out," he put his penis "in [the] lips . . . of [her] vagina," and eventually ejaculated on her.  Defendant had previously told the victim "that one time a boy's going to try to show [her] how to do things and [she'll] already know everything."

> The victim and her mother both testified that when the victim was about ten years old, she stopped wanting to go to defendant's house.  The victim explained that she did not tell anyone what defendant was doing because she was scared, believed her father would attack defendant, did not want to hurt defendant, and because defendant told her "never to tell anybody, it would be [their] little secret."  She further explained that she believed that defendant "loved [her] and . . . that was his way of loving [her]."  She indicated that she "started to like it" and would not tell defendant to stop, but now "hate[s] herself for that" and feels "disgusted."

-2-

In 2003, the victim moved from her mother's house into her father's house because she and her mother's boyfriend did not get along. In late 2004, the victim told her mother that defendant "touched her inappropriately." The victim's mother did not believe the victim, go to the police, confront defendant, or tell anyone. In April 2005, the victim told a classmate, who persuaded her to speak with a school social worker. After speaking with the social worker, the police became involved. An officer thereafter took the victim to the Oakland County Care House, where she spoke with a forensic interviewer. The victim's mother testified that, in June or July 2005, her father came to her mother's house and, when confronted with the victim's allegations, defendant said, "oh my God, I'm going to jail." The victim's mother described defendant as "very, very nervous and very scared."

The defense denied any wrongdoing. Rather, the defense argued that the victim was "attention seeking" and fabricated the "outlandish" charges against defendant to take revenge on her mother, who had chosen her boyfriend over the victim, and noted the victim's delay in reporting the incidents. The defense presented defendant's son, daughter, and granddaughter to testify on his behalf. The witnesses testified that the victim did not stay at defendant's house often, was never uncomfortable around defendant, and had problems with her mother's boyfriend. They also denied that defendant had ever inappropriately touched his other granddaughter.

*People v. Cochrane*, No. 269470, 2007 WL 4462385, at *1-2 (Mich. Ct. App. Dec. 20, 2007).

After his convictions and sentences, the defendant filed a direct appeal. The Michigan Court of Appeals affirmed in an unpublished opinion, *ibid.*, and the Michigan Supreme Court denied leave to appeal, *People v. Cochrane*, 480 Mich. 1190, 747 N.W.2d 309 (2008).

The petitioner's son, purporting to act on his father's behalf, attempted to file several post-conviction motions in the trial court following trial. One of those papers raised what now forms the petitioner's fifth claim. The trial court informed the petitioner at sentencing that it would not consider those motions because his son was not licensed to practice law.

The petition for a writ of habeas corpus asserts the following claims:

I.      The trial court violated [the petitioner's] due process rights by refusing to grant a reasonable adjournment of trial so that [he] could hire the necessary expert witness for the retrial.

II.     The trial court committed reversible error in denying the [petitioner's] motion for an independent evaluation of the accuser following the original

trial where the state had the accuser evaluated and used that evaluation against the defense.

III.    This court should reverse the [petitioner's] conviction based on constant and repeated introductions of inconsistent statements on the part of the accuser. Defense counsel was ineffective in not objecting to this highly prejudicial evidence.

IV.    The [petitioner] should be entitled to resentencing where the trial court imposed the sentence it did based on [his] decision to undergo two trials, and thereby humiliate the accuser.

V.    Prosecution witnesses, including the accuser [] and members of her family, willfully and maliciously made contact with the jury members prior to deliberations, depriving the [petitioner] of a fair verdict.

Pet. at 5-12. The respondent filed an answer contesting the merits and raising a procedural default defense to some of the issues.

The Court does not find it necessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved

-4-

an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court," or it amounted to "an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d

429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify

issuance of the writ; rather, the state court's application of federal law "must have been objectively

unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)

(internal quotes omitted)). Additionally, this Court must presume the correctness of state court

factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a

writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct."); *see also*

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference

to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court

has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its unanimous decision two terms ago in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state court rulings, and demands that state court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal

quotation marks and citations omitted)); *see also Peak*, 673 F.3d at 473-74; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner first argues that the trial court violated his right to due process when it denied his request for an adjournment prior to his second trial.  The petitioner requested a 30-day adjournment after his first trial ended with a hung jury so that he could obtain additional funds for attorney's fees, obtain the transcripts of the first trial, and hire an expert witness.  The trial court denied the request, and the state appellate court found that the trial court did not abuse its discretion in doing so.  The respondent asserts that the state court adjudication was reasonable.

The decision to grant or deny a continuance is within the discretion of the trial judge; "not every denial of a request for more time . . . violates due process."  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  A denial of a continuance violates due process "only where there is 'an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay."'"  *Landrum v. Mitchell*, 625 F.3d 905, 927 (6th Cir. 2010) (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)) (quoting *Ungar*, 376 U.S. at 589)).  A habeas petitioner must show "'that the denial resulted in actual prejudice to his defense.'"  *Ibid.* (quoting *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997) (internal quotation marks and citation omitted)).  Factors to consider in determining whether a continuance was properly denied include the length of the requested delay, whether other

-7-

continuances were granted, whether the request was for legitimate reasons, whether the defendant

contributed to the circumstances giving rise to the delay, whether the defendant was prejudiced by

the denial of the continuance, and the complexity of the case. *Id*. at 928.

The Michigan Court of Appeals rejected the petitioner's argument on direct appeal, stating:

Defendant was originally tried in November 2005, but the court declared a mistrial after the jury was unable to reach a verdict. Defendant's second trial was scheduled to begin on January 4, 2006. On December 12, 2005, defendant moved for a 30-day adjournment of trial because he was "in dire straits financially and needs more time for additional attorney fees in order to defend this case appropriately." Defendant also argued that he needed to retain an expert witness. At the hearing on the motion, defendant argued that he needed the adjournment to "have [his] experts review witness testimony, transcripts, documentation," and noted that the defense "do[es]n't even have the transcript from the first trial." The trial court denied defendant's motion and told defendant to talk to the stenographer about the transcript. The trial court noted that it had planned to start the trial immediately after the first trial, and that the January 4, 2006 date would not be adjourned.

A trial court's ruling on a motion for an adjournment is reviewed for an abuse of discretion. When deciding whether the trial court abused its discretion, this Court considers whether the defendant asserted a constitutional right, had a legitimate reason for asserting the right, had been negligent, and had requested previous adjournments. A defendant must also show prejudice as a result of the trial court's alleged abuse of discretion in denying an adjournment. "No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown. . . ." Mich. Comp. Laws [§] 768.2.

We find no abuse of discretion. Defendant claims that he needed more time to "hire an expert that he believed was essential to rebut the testimony of Amy Allen." n.1 But the record shows that Allen interviewed the victim in April 2005. The prosecution listed Allen on its witness list that was filed on August 22, 2005, nearly three months before defendant's first trial. Allen testified at defendant's first trial in November 2005. Defendant did not seek to introduce expert testimony at the first trial. Subsequently, defendant waited until one month after the first trial and three weeks before the scheduled date of the second trial to request an adjournment to address Allen's opinions. Although defendant claims that he needed time to employ an expert, the record shows that when he filed his motion for an adjournment on December 12, 2005, he had already identified the expert he intended to introduce at the second trial, Dr. Marcus Degraw, and provided his curriculum vitae. Furthermore, apart from making a general statement that he needed an expert, defendant did not make an offer of proof at the hearing below, nor does he explain on appeal how an expert would have actually been valuable to his defense.

-8-

Defendant also makes a general claim that the trial court's denial of an adjournment "interfered with counsel's ability to prepare an effective defense." But the charges and evidence, including the prosecution witnesses, were essentially the same in both trials. Further, defense counsel represented defendant at both trials. Thus, defense counsel was fully aware of the facts in the case, which were not overly complex. Under these circumstances, the trial court did not abuse its discretion by denying defendant's request for adjournment of trial.

_____

n.1 Amy Allen is a social worker and forensic interviewer for Care House, which is a child abuse and neglect council in Oakland County. During direct examination, Allen testified about the creation, purpose, and use of the forensic interview protocol, and about the general characteristics and behavior of child victims of sexual abuse based on relevant research and literature.

*People v. Cochrane*, 2007 WL 4462385, at *2-3 (citations omitted).

The reasons for the trial court's insistence on proceeding apace with the trial are not readily apparent. Nonetheless, the record does not demonstrate prejudice to the petitioner, and it is difficult to divine a due process violation from the petitioner's submissions. Therefore, it cannot be said that the Michigan courts unreasonably applied federal law in holding that the denial of a continuance in this case did not violate the petitioner's due process rights. The adjournment request occurred in the context of a retrial. The petitioner's lawyer had been prepared for the first trial. There were no surprise witnesses offered by the prosecution at the first or second trial that the petitioner needed time to prepare for in advance of the retrial. There was no reason offered preventing the retrial from occurring immediately after the first one concluded, except, perhaps, the need to secure transcripts. The decision to use an expert witness to counter Allen's testimony clearly could have been made before the first trial, and it was not unreasonable for the state court to conclude that the belated request for time to hire one for the retrial was not legitimate. The petitioner has not submitted an affidavit or offer of proof as to what an expert witness's testimony would have been. The petitioner merely attached the curriculum vitae of Dr. Marcus DeGraw, without any other supporting

documents.   Despite his request for time to find funds for attorney fees, the same attorney who

represented him at the first trial also represented him at the second one.  The petitioner has not

shown that the trial court's denial of his adjournment request constituted an abuse of discretion,

deprived him of a substantial defense, or otherwise rendered his trial fundamentally unfair.  Habeas

relief is not warranted on this claim.

B.

The petitioner next asserts that the trial court erred by refusing to compel the complainant

to undergo an independent psychological examination.  However, federal habeas relief is not

available for that claim.   The trial court's decision not to require an independent medical

examination of a victim is a discovery ruling based on state law, limiting habeas review to a

determination of whether the denial "'offend[ed] . . . some principle of justice so rooted in the

traditions and conscience of our people as to be ranked as fundamental.'"  *Giles v. Schotten*, 449

F.3d 698, 704 (6th Cir. 2006) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).  Habeas

relief may be granted on this issue only if the trial court's discovery ruling was so egregious that it

resulted in a denial of fundamental fairness.  *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004).

> The Michigan Court of Appeals addressed this claim as follows:
>
> Next, defendant argues that the trial court erred when it denied his request to have
> the victim undergo an independent psychological examination.  Defendant asserted
> that the victim examination was necessary because the forensic interviewer, Allen,
> was viewed as an expert, was hostile to the defense, and had no practical experience.
> We disagree.
>
> This Court reviews a trial court's decision to deny a defendant's request for a
> psychological examination of a victim for an abuse of discretion.  A psychological
> examination of a victim is permissible only where there is a "compelling" reason for
> the examination.  This Court has cautioned against sanctioning "fishing expeditions."
> "[T]he trial court should consider whether the defendant's rights can be fully
> protected by cross-examination."

-10-

> Defendant did not offer a compelling reason to conduct a psychological examination of the victim. The fact that defendant found Allen unqualified, adverse, and hostile is not a sufficient basis for such a request. As the trial court aptly noted, the reason asserted by the defense is "great for cross-examination" of Allen. The court further indicated that defendant "was able to get [his] own [expert] witness to testify." Indeed, at trial, defendant did cross-examine Allen about her qualifications, among other things. Defendant also cross-examined the victim and thoroughly explored issues of her credibility. In sum, the trial court did not abuse its discretion when it refused to order an independent psychological examination of the victim.

*People v. Cochrane*, 2007 WL 4462385, at \*3 (citations omitted).

A defendant certainly has a basic right "to defend himself against the charges the state has brought against him." *Giles*, 449 F.3d at 704. But that right must be balanced against the state's "compelling" interest in "the protection of minor victims of sex crimes from further trauma and embarrassment.'" *United States v. Weekley*, 130 F.3d 747, 753 (6th Cir. 1997) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)). The Supreme Court has held that in child sex abuse cases, "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Giles*, 449 F.3d at 704 (quoting *Maryland v. Craig*, 497 U.S. 836, 853 (1990)). A defendant's right to present evidence may be subject to restrictions, provided that the restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998).

In this case, Amy Allen of Care House testified that she was trained in the forensic interviewing process, and she interviewed the fifteen-year-old complainant for about an hour. Allen testified that delayed disclosure of sexual abuse is common. Allen explained that she does not attempt to determine conclusively whether a child is telling the truth or not, but she tests alternative hypotheses to decide whether an investigation should move forward. Allen testified that there was research indicating that children aged eight years or older are not more open to suggestion than

-11-

adults, and that a forensic interviewer had no more influence on a eight-year old as an adult.  Allen

never testified that she believed the complainant's claims of being molested by the petitioner were

true.  She did testify, however, that the complainant's reported behaviors were consistent with

victims of sexual abuse.

Defense counsel was able to fully and fairly confront Allen's testimony through cross-

examination.  Allen conceded that there were alternate theories that led children to falsely accuse

a person of sexual molestation including divorce, attention seeking, or identifying the wrong

perpetrator.  Counsel elicited from Allen that her training amounted to an undergraduate degree and

only three days of training with the F.B.I.  Allen conceded that it was possible that the complainant

was attention seeking, and that this was consistent with what she told Allen.  She also conceded that

she was unaware of the complainant's home life, medical history, or school record.  Allen admitted

that those pieces of information would have been helpful to her.  Allen conceded that often times

a delay in reporting sexual molestation occurs because the victim is still in contact with the

perpetrator, which was not the case here.  Moreover, the petitioner fully cross-examined the

complainant regarding the various reasons and motivation she might have had to falsely accuse him.

The petitioner's interest in defending himself against the charges was vindicated by the

cross-examination of Allen, which elicited significant concessions, and the cross-examination

permitted of the complainant.  The trial court's denial of a psychological examination of the victim

did not render the proceedings fundamentally unfair.  Allen never testified, nor would she have been

permitted to testify, that the complainant was telling the truth.  The damaging part of her testimony

was her statement that delayed disclosures in sexual abuse cases are not uncommon, and Allen's

interview was not suggestive.  Countering those aspects of her testimony did not require an

-12-

independent examination of the complainant. The trial court's ruling denying the request for an independent examination did not render the petitioner's trial fundamentally unfair.

C.

The petitioner argues that the prosecutor improperly used prior consistent statements made by the complainant to corroborate her testimony. No constitutional violation resulted, however, because the complainant testified and was subject to cross-examination. The only error can be found in the application of Michigan Rule of Evidence 801(d)(1)(B).

It is well established that "federal habeas corpus review does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The Sixth Circuit has held that "[i]n a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981). Therefore, the petitioner's claim that the trial court violated Michigan Rules of Evidence 801(d)(1)(B), the legal basis he relied upon in the state courts, is not cognizable on federal habeas review.

D.

The petitioner next asserts that the trial court improperly considered his refusal to admit guilt as a factor in determining his sentence. The foundation for that argument is a remark the trial judge made at the sentencing hearing.

A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *Wasman v. United States*, 468 U.S. 559, 568 (1984). "[D]ue process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by *actual vindictiveness* toward the defendant for having exercised guaranteed rights." *Ibid*. (emphasis added). In the narrow circumstance where a court increases a previously imposed sentence after a successful appeal by a

-13-

defendant, there is presumption of vindictiveness. *Id*. at 568-69. But under clearly established Supreme Court law, absent such specific circumstances, the defendant must affirmatively prove actual vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799 (1989). The mere imposition of a longer sentence than a defendant would have received had he pled guilty does not automatically constitute vindictive or retaliatory punishment. *Williams v. Jones*, 231 F. Supp. 2d 586, 599 (E.D. Mich. 2002).

The Michigan Court of Appeal denied the claim as follows:

Defendant argues that he is entitled to resentencing because the trial court improperly considered his failure to admit guilt when it refused to sentence him at the lower end of the guidelines range. We disagree that the trial court relied on an improper factor when imposing sentence, but conclude that defendant is entitled to resentencing on his first-degree CSC convictions because the trial court inadvertently departed from the sentencing guidelines range without articulating substantial and compelling reasons for a departure.

This Court must affirm a sentence within the guidelines range absent an error in the scoring of the guidelines or reliance on inaccurate information in determining the sentence. But this requirement cannot be applied where the trial court erroneously considered a defendant's refusal to admit guilt in violation of the defendant's constitutional right against self-incrimination. "A sentencing court cannot base its sentence even in part on a defendant's refusal to admit guilt." "Resentencing is warranted if 'it is apparent that the court erroneously considered the defendant's failure to admit guilt, as indicated by action such as asking the defendant to admit his guilt or offering him a lesser sentence if he did.'"

Review of the record reveals that the trial court made an isolated remark regarding the fact that the victim had been through two trials as a result of what happened with defendant. It is apparent that the trial court's sentence was not based on defendant's refusal to admit guilt. The trial court did not ask defendant to admit guilt or offer him a lesser sentence if he did. Moreover, the court clearly listed the factors it considered critical to defendant's sentence, including the victim's age and maturity, and defendant and the victim's relationship. Also, the court opined that the offense, itself, warranted a higher guidelines range. Consequently, defendant is not entitled to resentencing on this basis.

However, although not specifically raised by defendant, we agree that defendant is entitled to resentencing on his first-degree CSC convictions. Under the sentencing

guidelines statute, the trial court must ordinarily impose a minimum sentence within
the calculated guidelines range. . . .

*People v. Cochrane*, 2007 WL 4462385, at \*5 (citations omitted).

The petitioner's argument is not without some record support. Nonetheless, the Court finds

that the state court of appeals reasonably applied Supreme Court precedent based on its view of the

record, which itself was not unreasonable. At the sentencing hearing, defense counsel asked the trial

court to sentence the petitioner at the low end of the sentencing guidelines because he had no prior

criminal record and because of his age. The court responded to this argument as follows:

> [Defense counsel] asked me to sentence you at the low end of the guidelines. That
> would never happen after you having her go through her experiences in this court,
> not once, but twice. If I could give you more and satisfy the Supreme Court's
> requirements, I would give you more.

Sent. Tr. at 11. The court then imposed an 18-to-30 year sentence, which it believed fell within the

state sentencing guideline range. In fact, the top of the guidelines was 17-½ years; the petitioner was

resentenced to that minimum term after the state appellate court caught the mistake.

There is no question that when imposing the sentence, the sentencing court considered the

fact that the petitioner exercised his right to stand trial twice — thereby forcing the complainant to

go through the trial process twice. But a reasonable argument can be made that the court did not

impose a *greater* punishment because the defendant exercised a constitutional right. The court's

statement was a response to the suggestion that the court show leniency because of the petitioner's

lack of a criminal record and age. The trial court stated that its reason for imposing a top-of-the-

guideline sentence, on the other hand, as follows: "you being 67 years old, I don't suspect that if and

when you'll be eligible for parole, you'd be much of a threat to society." Sent. Tr. at 13.

The court apparently determined that a severe sentence was warranted because of the threat

that the petitioner posed to society, and he was unwilling to reduce that sentence based on the plea

-15-

for mercy made by defense counsel. Defense counsel's request for leniency — which was at heart a request for the court to be merciful — was denied because the petitioner had shown no mercy by making the complainant go through trial twice. Here, one reasonable view of the record is that the court did not impose a greater sentence than he otherwise would have imposed because the petitioner stood trial.

One could reasonably and persuasively argue that the sentencing court considered the petitioner's exercise of his trial right as a factor in the severity of the sentence. But the opposite is true as well. And in *Harrington v. Richter*, the Supreme Court reiterated that a state court's determination that a claim lacks merit precludes habeas relief if "fairminded jurists could disagree" on the correctness of the state court's decision. *Harrington*, 131 S. Ct. at 785-86. Therefore, although the result might be different if this case were before the Court on direct review, the Court must find that the claim is without merit given the constraints imposed by AEDPA.

E.

The petitioner's final claim asserts that prosecution witnesses including the complainant made contact with jurors in the courthouse hallway prior to deliberations. He argues that a witness for the defense saw the interaction. The respondent asserts that the claim was never presented to the state courts but it should be denied notwithstanding the failure to exhaust state court remedies under 28 U.S.C. § 2254(b)(2).

The petitioner's son filed various motions for post-conviction relief on behalf of the petitioner in the trial court in February and March of 2006 that raised this as well as several other claims. The trial court warned the petitioner that his son was not permitted to practice law, and it would not consider the papers. One such motion, entitled "Defendant's Motion to Overturn Verdict and Dismiss all Charges" alleges that "prosecution witnesses, including the accuser herself, willfully

-16-

and maliciously made contact with jury members prior to deliberations. That this was brought to the court's attention, yet no reasonable attempt was made to address the issue." Docket #9-15, at 2.

The claim is belied by the record. The petitioner does not cite, nor can the Court locate, any place in the trial court record where an allegation was made of contact between witnesses and the jury. Furthermore, the trial court repeatedly instructed the jury throughout the trial not to discuss the case with anyone prior to deliberations. Juries are presumed to follow their instructions. And the petitioner has proffered no evidence here that the jury ignored the instructions and spoke with witnesses about the case in the courthouse. *United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011). The claim is without merit.

### III.

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States. The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the amended petition for a writ of habeas corpus is

**DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 22, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or
first class U.S. mail on February 22, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL